**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **Robert Wainblat, for himself and all others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**Comcast Cable Communications, LLC, a Delaware limited liability company; and Does 1-50, inclusive,**<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION**<br><br>Complaint for Damages, Declaratory Relief, and Injunctive Relief for:<br><br>1.   Violations of 47 U.S.C. § 521 *et seq.*, the Cable Communications Policy Act of 1984, as amended.<br>2.   Violations of Massachusetts General Laws c. 93A, §§ 2 and 9<br><br>**Demand for Jury Trial** |

**INTRODUCTION**

1.  Defendant Comcast Cable Communications, LLC ("Comcast" or "Defendant"), the nation's largest cable provider, systematically violates cable television subscribers' federal statutory privacy rights, and Massachusetts' consumer protection laws, by gathering, maintaining, and using consumers' private video viewing data without consent.[1]

2.  The Cable Communications Policy Act of 1984 (the "Cable Privacy Act"), 47 U.S.C. § 521 *et seq.,* seeks to safeguard the privacy and security of subscribers' personal information against the technical capabilities of two-way cable networking equipment. To that end, it prohibits cable providers, like Comcast, from collecting, using, and maintaining

---

[1] The allegations herein concerning Plaintiff's personal experience and/or actions are made based upon his personal knowledge. The remaining allegations are made on information and belief based on the investigation of counsel.

1

information about customers or their viewing habits except under strictly limited conditions. The Cable Privacy Act requires that a cable operator obtain the "written or electronic consent of the subscriber concerned" *before* collecting and using that information. Cable providers further:

   a. must annually provide a written statement to their subscribers that clearly and conspicuously informs them of the nature of the use of the personally identifiable information that the cable operator collects;

   b. must not disclose the subscriber's personally identifiable information without the subscriber's consent; and,

   c. must make *all* of the subscriber's personally identifiable information available for that subscriber's inspection, upon request.

3. The Cable Privacy Act was intended to grant and granted subscribers autonomy and control over the collection, use, and retention of their personal and private data, including when and what they watch in the privacy of their own homes. Comcast has systematically violated this law and Congress' intent by collecting and using its subscribers' information without their consent. Plaintiff and the Class seek monetary, injunctive, and declaratory relief to remedy Comcast's challenged practices and conduct.

**PARTIES**

4. Plaintiff Robert Wainblat is, and at all relevant times was, an individual residing in Boston, Massachusetts. He subscribed to and paid for Comcast's cable television services in Massachusetts beginning in approximately September 2013. At the start of his subscription, Comcast supplied him with a set-top cable box.

5. Defendant Comcast Cable Communications, LLC is a Delaware limited liability company with its principal place of business in Philadelphia, Pennsylvania. Comcast offers and

sells its services and products to Massachusetts residents. Subscribers pay Comcast a monthly fee based on the services and products obtained. Comcast owns or leases property in Massachusetts and has numerous employees located in the State.[2] Comcast operates 315 storefronts throughout Massachusetts.[3]

6. Plaintiff is unaware of the true identities of those Defendants sued herein as Does 1 through 50, inclusive, and therefore sues those Defendants by these fictitious names. Plaintiff will seek leave to amend this Complaint to identify these fictitiously named Defendants when their identities are ascertained. Each fictitiously named Defendant is liable in some manner for Plaintiff's injuries and damages.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here.

## COMMON FACTUAL ALLEGATIONS

**A. Comcast systematically violates its statutory obligations by collecting, maintaining, and using customers' personally identifiable viewing data without consent, and by refusing to provide it when asked.**

8. Comcast's cable television system transmits data to and from the set-top box it provides to customers (two ways). This enables Comcast to do some benign things like bill subscribers for pay-per-view programming. That same capability, however, enables Comcast to acquire, maintain, and use detailed information about, *inter alia*, what subscribers watch. This

---

[2] *See* https://www.xfinity.com/locations/massachusetts (last visited April 18, 2019)
[3] *Id.*

3

personally identifiable information ("PII"), consisting of detailed subscriber video viewing (and other) data, combined with Comcast's own subscriber information and with demographic and other data (that Comcast can acquire from other sources), positions Comcast as an advertising powerhouse. But the Cable Privacy Act prohibits cable operators like Comcast from collecting such PII without customers' consent.

9.  The Cable Privacy Act also requires cable operators to provide subscribers access to all PII the cable operator collects and maintains concerning the subscriber. 47 U.S.C. § 551(d). When customers ask for this access, however, Comcast produces only the subscriber's name, partial social security number, address, and telephone number—without providing any video activity data or demographic data that Comcast maintains. In failing and refusing to produce the information Comcast violates subscribers' statutory rights and actively conceals its illegal practices.

> 1) *We know Comcast illegally collects and maintains personally identifiable viewing and other data because it advertises services that depend on the collection, maintenance, and use of data that personally identifies individuals*

10. Comcast has acquired, developed, and deployed two-way cable-network technologies to become a leader in targeted advertising to its cable customers. Because of the greater efficacy of this highly targeted advertising, Comcast can charge its advertisers a premium. Data drives profits. Comcast's acquisitions to this end include (but are not limited to) its purchase of Visible World, a New York based company that "works with marketers to deliver ads to specific audiences and households based on zip codes, using data from cable set top boxes

and other sources," and that "also has a division that allows marketers to use software to buy TV ads in an automated fashion as they do when they buy online ads."[4]

11. Comcast's data collection allows it to identify, accurately and personally, the best candidates for any particular advertisement and when and where to show them those advertisements.

12. In addition to subscribers' viewing histories, the PII that Comcast collects and uses to target ads includes customers' incomes, ethnicities, education level, the cars they drive, the products they buy, and where they live—data Comcast acquires from other sources, like Experian, and matches with existing PII in the subscriber profiles Comcast creates, maintains, and updates.[5]

13. Comcast boasts that its advertising arm, Spotlight, can link myriad points of user data to target specific individuals:

> Our mission is to take what can be complex about local and multi-market advertising and make it simple. We've made it easy to pinpoint the right audience and deliver the right message at the right time.
>
> With an average of 50 or more distinct networks available in every market we serve, Comcast Spotlight can tap into the greater purchasing power of cable viewers and precisely segment audiences based on demographic, psychographic and geographic criteria.
>
> …

---

[4] Suzanne Vranica, "Comcast Has Agreed to Buy Ad Tech Firm Visible World," *The Wall Street Journal* (Jun. 4, 2015) (available at http://blogs.wsj.com/cmo/2015/06/04/comcast-has-agreed-to-acquire-ad-tech-firm-visible-world/) (last visited April 18, 2019)

[5] Center for Digital Democracy, "Big Data is Watching: Growing Digital Data Surveillance of Consumers by ISPs and Other Leading Video Providers Center for Digital Democracy" (March, 2016) (available at (https://www.democraticmedia.org/sites/default/files/field/public-files/2016/ispbigdatamarch2016.pdf) (last visited April 18, 2019)

> Knowledge is power, and Comcast Spotlight's research team provides the insights that identify not just who a company's best customers are, but what, when and where they're watching.[6]

14. Comcast's development and use of user profiles—assembled from the personally identifiable information of its cable subscribers—does not stop at the television screen. Comcast touts that its user profiles *further* identify (and follow) the subscriber to his or her computer or other internet-enabled devices, gather data on social media and other use, adding that data to its user profiles. Then:

> Comcast Spotlight's multi-screen solutions include television and online advertising to integrate an advertiser's message to potential customers in a more engaging and impactful way. Multi-screen advertising extends reach, builds frequency and provides advertisers with multiple exposures in Comcast homes across the county.[7]

Comcast sells the benefits and features of this surreptitious profiling and tracking to advertisers, touting the value of the "unifi[cation]" of "TV and online efforts," of "unduplicated local reach" and "extend[ing] existing TV commercial creative into the online space creating cost efficiencies."[8]

15. In the course of individually identifying specific customers, and causing ads to follow that customer from her television set to her computer or her smartphone, Comcast "utilizes both geographic and demographic targeting capabilities" and allows advertisers to "demographically target the same :30 video message on two screens to reach the target audience."[9] Put another way, Comcast amasses its subscribers' personally identifiable

---

[6] Exhibit A, 2016 Comcast Spotlight Media Kit ("Media Kit I") at p. 1.
[7] Exhibit B, Comcast Spotlight Media Kit ("Media Kit II") at p. 4.
[8] *Id.*
[9] *Id.*

information (including their TV viewing habits and email addresses, IP addresses, and/or mobile device identifiers) to allow third party advertisers to blast them with advertisements in their living rooms, on their computers, and on their smartphones and tablets. *It is not possible to "follow" subscribers from device to device without knowing what unique devices belong to which unique subscribers.*

### 2) The video activity data that Comcast collects is personally identifiable information under 47 U.S.C. § 551.

16. Comcast's cable system generates, transmits, and collects data about subscribers' cable television viewing activity ("video activity data"), including which channels, programs, and advertisements subscribers view and for how long.[10] That information, and the way Comcast admits using it, show that subscriber viewing data is PII under the Cable Privacy Act.[11]

17. For example, Comcast links subscribers' video activity data to subscribers' individually-identifiable account numbers and individually-identifiable device identifiers.[12] Video activity data linked to an account number or device identifier is PII because Comcast can

---

[10] Comcast Customer Privacy Notice, Updated January 1, 2018, *§* I. Collection of Information, Information We Collect When You Use the Services, (available at https://www.xfinity.com/corporate/customers/policies/customerprivacy) (last visited April 18, 2019).

[11] Per the FCC, the federal agency in charge of promulgating rules under the Cable Privacy Act, "[i]n general, PII is information that can be used on its own or with other information to identify, contact, or locate a single person, or to identify an individual in context." *In the Matter of TerraCom, Inc. and YourTel America, Inc.*, FCC-14-173 at ¶ 17

[12] As used herein, a "device identifier" is a set of unique data points (typically numbers and letters), akin to a social security number, that is used to identify all activity associated with a specific device (and accordingly, with the individual associated with that device), allowing third parties to track the device's user over time and, when combined with other data, across devices (*e.g.*, smart phones, tablets, laptops, desktops and smart TVs).

personally identify—and does personally identify—the subscriber associated with the video activity data from its records linking account numbers and device identifiers with specific subscribers.

18. Comcast's media partners provide further confirmation that Comcast collects its subscribers viewing data on a PII-basis (with that data linked or linkable to the specific subscriber in question). In an advertising white paper titled "Addressable TV," data aggregator Experian explains how companies can partner with Comcast and other cable operators to use viewing data to target individual customers:

> Like a piece of mail that arrives in your mailbox, the TV ad can be tailored to the household, with different ads delivered to different households simultaneously across the same ad unit.[13]

Further,

> To target at the household level via addressable TV, one must buy from TV operator (Cablevision, Comcast, Dish Network, DIRECTV) who has set-top box technology to target and deliver the one-to-one ads.[14]

19. Indeed, "Addressable TV is about the person and not the program. You and your next door neighbor may be watching the same show, but through the power of Addressable TV, end up viewing different ads."[15]

---

[13] Exhibit C, *Addressable TV – Harness the Power of Audience Data for One-to-One Targeting*. Experian (2016)
[14] *Id.*
[15] *Id.*

20.     The personally identifiable demographic data that Comcast collects and maintains about its subscribers includes their age, gender, presence and age of children, education, occupation, marital status, household size, property ownership, mortgage/loan/insurance data, automotive ownership, general interests, and even magazine subscriptions.[16] This data is personally identifiable because it is linked to and concerns a particular subscriber, and is used (without limitation) to target ads to the subscriber's devices based on their demographic characteristics and to measure the popularity of programs among subscribers based on their characteristics.

### B. Comcast's Conduct Violates Federal and State Law

21.     The Cable Privacy Act requires cable operators to obtain the "written or electronic consent of the subscriber concerned" before using the cable system to collect PII concerning any subscriber (subject to certain inapplicable exceptions). *See* 47 U.S.C. § 551(b). Comcast violated, and continues to violate, this requirement by collecting personally identifiable data from subscribers through its cable system for advertising purposes without their prior written or electronic consent, including but not limited to their personal viewing histories.

22.     Currently, rather than obtain prior written or electronic consent, Comcast requires its customers to opt *out* of the use of their personally identifiable information by third parties.[17] Even then, however, Comcast continues to *collect* the PII unlawfully (users just do not see targeted ads fueled by the collected PII). Because Comcast subscribers are automatically opted *in*

---

[16] Comcast Spotlight, Audience Intelligence, (available at https://yousenditcc.s3.amazonaws.com/Audience_Intelligence_1.pdf) (last visited April 18, 2019).

[17] Comcast Customer Privacy Notice, Updated January 1, 2018, *§* IV. Your Choices, Opting Out of Certain Marketing Communications; *see* footnote 10, *supra*.

to this collection and usage of their PII (and because Comcast users cannot escape the collection of their PII under any circumstances), Comcast's practices are insufficient to constitute *prior* written or electronic consent under the Cable Privacy Act (or, indeed, any consent).

23. The Cable Privacy Act also requires cable operators to provide written notice to their subscribers, upon contracting and annually thereafter, "which clearly and conspicuously informs the subscriber of ", among other things, the nature and purpose of the PII collected; the nature and frequency of disclosures of such PII to third parties; the duration that a cable operator will maintain said PII; the mechanism by which a subscriber may obtain access to her PII for review; and the full set of rights of the subscriber as set forth in the Cable Privacy Act. 47 U.S.C. § 551(a)(1). Throughout the relevant period, Comcast's Privacy Notice failed to clearly and conspicuously tell subscribers any of this information, and instead mislead subscribers as to the full extent of PII collected and used, or of the subscribers' rights regarding said PII.

24. The Cable Privacy Act also requires cable operators to provide subscribers access to all PII regarding themselves which the cable operator collected and maintains. *See* 47 U.S.C. § 551(d). Comcast does not provide cable subscribers who request access to their PII with a copy of all PII regarding that subscriber that Comcast has collected and maintains. Rather, when subscribers request access to the PII associated with their account (including Plaintiff), Comcast provides only the subscriber's name, partial social security number, address, and telephone number without providing any of the video activity data or demographic data that Comcast collects and maintains.

25. Comcast's conduct also violates Massachusetts General Laws c. 93A, Regulation of Business Practices for Consumers' Protection. By failing to provide clear and conspicuous disclosures, by omitting information regarding the extent to which it is combining and sharing

information, and by using subscriber information without the consent required by law, Comcast has engaged in, and continues to engage in, unfair and deceptive acts and practices.

## INDIVIDUAL ALLEGATIONS

26. Plaintiff Wainblat subscribed to Comcast cable television service for his residence in Boston, Massachusetts beginning in approximately September 2013.

27. When Wainblat's Comcast cable television subscription began, and at least once a year thereafter, Comcast provided Wainblat with a copy of its Customer Privacy Notice, which suffered from the above-alleged deficiencies.

28. Comcast never obtained Plaintiff Wainblat's electronic or written consent to collect his PII using its cable system, as required by the Cable Privacy Act.

29. At the start of his cable subscription, Comcast provided Plaintiff Wainblat with a set-top cable box. Wainblat watched cable television using the set-top cable box during his cable subscription. Throughout Wainblat's subscription to Comcast's cable television service, Comcast collected and maintained Wainblat's PII pursuant to its standardized practices as alleged above.

30. On April 27, 2018 Mr. Wainblat requested, through counsel, that Comcast produce the personally identifiable information associated with his account. In response, on June 27, 2018, Comcast stated:

> Personally identifiable information ("PII"), as that term is used in 47 U.S.C. § 551 is available to you through My Account, which can be accessed by visiting xfinity.com/myaccount or through the My Account app. Your billing statements, which may display PII, can also be accessed through My Account. If you need assistance accessing My Account or you would like hard copies of your billing statements, please submit that request to us through your counsel.

31. The information available at xfinity.com/myaccount excludes the bulk of the personally identifiable information in Comcast's possession concerning Mr. Wainblat. Among other things, these sources do not include Mr. Wainblat's video activity data, or the personally

identifiable information concerning Mr. Wainblat that Comcast has obtained from third parties (*e.g.* demographic data, interest data, and purchase data).

32. Comcast's practices regarding subscriber requests are uniform, and all parties seeking access to their PII receive a similar response (and are refused access to the full complement of PII collected, maintained, and used by Comcast).

33. Wainblat faces a threat of imminent or actual harm because, *inter alia*:

   a. Comcast and undisclosed third parties continue to maintain and use his wrongfully obtained PII;

   b. Comcast is in continuing breach of its statutory duty to provide him with his PII; and

   c. he cannot make an informed decision about whether to subscribe to Comcast cable television in the future—and otherwise safeguard his privacy interest in his PII— without knowing the full extent of Comcast's data collection and whether Comcast has ceased its unlawful practices.

## CLASS ALLEGATIONS

34. Pursuant to Federal Rule of Civil Procedure 23[18], Plaintiff brings this action for himself and the following Class (the "Class"):

> All persons in Massachusetts who have or had a residential Comcast cable television subscription.

35. Excluded from the Class are the following individuals: officers and directors of Comcast and its parents, subsidiaries, and affiliates, all judges assigned to hear any aspect of this

---

[18] As set forth below, Plaintiff seeks to certify the Class pursuant to Federal Rule of Civil Procedure 23(b)(3), or in the alternative, Federal Rule of Civil Procedure 23(b)(2).

litigation, and all of the foregoing persons' immediate family members.

36. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

37. <u>Numerosity</u>:  The class is so numerous that joinder is impracticable. Comcast has millions of subscribers nationwide—and at least tens of thousands of subscribers in Massachusetts—and treats each one in the same manner. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Comcast's possession, custody, or control.

38. <u>Typicality</u>:  The claims of the representative Plaintiff are typical of the claims of the Class in that Comcast systematically collected, maintained, and used Plaintiff's and Class members' PII in the same unlawful manner. Further, the factual bases of Comcast's misconduct represent a common thread of misconduct resulting in injury to Plaintiff and all Class Members.

39. <u>Commonality</u>:  There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting only individual Class members, including:

    a. Whether the video activity data, demographic data, and any other customer data that Comcast collects, maintains, and uses, is PII under the Cable Privacy Act;

    b. Whether Comcast clearly and conspicuously informs subscribers of the nature and scope of its collection and use of PII;

    c. Whether Comcast clearly and conspicuously informs subscribers of their rights under the Cable Privacy Act;

    d. Whether Comcast obtains prior written or electronic consent to collect PII using is cable system;

    e. Whether Comcast uses an electronic device to record, transmit, or observe events that take place inside its subscribers' residences;

    f. Whether Comcast obtains subscribers' express written consent to record, transmit, or observe their PII;

    g. Whether Comcast provides subscribers adequate access to their PII, pursuant to the Cable Privacy Act; and

    h. Whether the Class Members are entitled to equitable relief, including but not limited to a preliminary and/or permanent injunction.

40. <u>Adequate Representation</u>: Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, consumer class actions in particular, and consumer privacy class actions specifically. Plaintiff intends to prosecute this action vigorously.

### **Fed. Rule Civ. P. 23(b)(3)**

41. <u>Predominance and Superiority</u>: Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Comcast's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high. Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Absent a class action, Class Members will continue to incur damages, and Comcast's misconduct presumably will continue without remedy. Class treatment

of common questions of law and fact would also be a superior to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

### Fed. Rule Civ. P. 23(b)(2)

42.     Comcast has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole.  The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards for Comcast.

43.     Injunctive and/or declaratory relief is necessary to prevent further unlawful and unfair business practices by Comcast.  Money damages alone will not afford adequate and complete relief, and injunctive relief is necessary to restrain Comcast from continuing to commit its illegal and unfair policies.

### COUNT I
### Violation of 47 U.S.C. § 551
### (For Plaintiff and the Class)

44.     Plaintiff incorporates by reference paragraphs 1 through 43 above.

45.     In violation of 47 U.S.C. § 55l(a)(l), Comcast failed to clearly and conspicuously notify subscribers (including Plaintiff) in writing, at the requisite times, of the nature of the PII collected by Comcast, or the nature of such use; the nature, frequency and purpose of any disclosure of such PII; the period during which such information will be maintained by Comcast; the time and place at which the subscriber may have access to said PII; and the limitations placed on Comcast regarding said PII under the Cable Privacy Act.

46. In violation of 47 U.S.C. § 55l(b), Comcast used its cable system to collect PII of its subscribers (including Plaintiff) without their prior written or electronic consent.

47. As described herein, Comcast's collection and use its subscribers' PII is not permitted under 47 U.S.C. § 551 (b)(2) because such collection is not for the purpose of: (a) obtaining information necessary to render a cable service or other service provided by the cable operator to the subscriber; or (b) detecting unauthorized reception of cable communications.

48. In violation of 47 U.S.C. § 551(c), Comcast disclosed and discloses its subscribers' PII to third parties (including but not limited to Spotlight and Experian) without those subscribers' prior written or electronic consent. Such disclosure is not permitted under 47 U.S.C. § 551 (c)(2) because such collection is not for the purposes enumerated thereunder.

49. In violation of 47 U.S.C. § 55l(d), Comcast failed to provide Plaintiff with access to all PII regarding Plaintiff that Comcast collected and maintains after Plaintiff requested access to his PII. Among other things, although Comcast maintains PII in the form of video activity data and demographic data relating to Plaintiff, Comcast did not provide access to that information in response to Plaintiff's request. Comcast's policies and procedures in this regard are uniform, with respect to Plaintiff and Class members.

## COUNT II
### Violation of Massachusetts General Laws Chapter 93A
### (For Plaintiff and the Class)

50. Plaintiff repeats and incorporates by reference herein paragraphs 1 through 43 above.

51. The wrongful acts of Defendant, as set forth above, constitute a violation of Massachusetts General Laws c. 93A §§ 2 and 9 because they misrepresented and/or failed to

inform Comcast subscribers of the extent of the use of the subscribers' personal data and failed to properly obtain the customer's consent.

52. Plaintiff and the Class suffered actual injury as a result of Defendant's acts, practices, and omissions.

53. In violation of its statutory obligations, Defendant omitted facts concerning Comcast's data collection and use of sensitive PII that thwarted each Class member's reasonable expectation of privacy vis-à-vis Comcast's products and services and inflated the value and price thereof. Plaintiff would not have paid as much as he did (or at all) for Comcast's services, had he known the full extent of the facts omitted by Comcast. Defendant's conduct also resulted in an intrusion into the personal life and private affairs of each Class member, causing injury in an amount to be proven at trial but in any event valued at greater than a penny.

54. Defendant performed the actions described herein willfully and knowingly within the meaning of M.G.L. c. 93A § 9(3), thereby entitling Plaintiff and the members of the Class to attorneys' fees and trebled damages.

55. Plaintiff made a written demand for relief pursuant to M.G.L. c. 93A § 9(3)[19], and Comcast has failed to make a timely and adequate response, thereby entitling Plaintiff to judgment on this matter and for all damages authorized by statute.

## PRAYER FOR RELIEF

Plaintiff, for himself and all others similarly situated, request the Court to enter judgment against Defendants, and accordingly, request the following:

---

[19] Plaintiff's demand, and Comcast's response thereto, is attached hereto as Exhibit D

      A.      That the Court determine that this action may be maintained as a class action under Federal Rules of Civil Procedure 23(b)(3) and/or 23(b)(2); that Plaintiff is a proper class representative; that the best practicable notice of this action be given to members of the Class represented by Plaintiff; and that Plaintiff's counsel be appointed as Class counsel;

      B.      That judgment be entered against Defendants and in favor of Plaintiff and the Class on the Causes of Action in this Complaint;

      C.      For injunctive relief requiring Comcast to:

        i. clearly and conspicuously notify cable subscribers in writing, at the requisite times, of the full extent of the PII collected, used, maintained, and disclosed by Comcast, and of its subscribers' full panoply of rights pursuant to the Cable Privacy Act;

        ii. stop using its cable system to collect cable subscribers' PII without their prior written or electronic consent;

        iii. destroy all PII collected from cable subscribers through the cable system without prior written or electronic consent and any information derived in whole or part from such data;

        iv. change its procedures to provide cable subscribers who request access to their PII with access to all such PII in Comcast's possession; and

        v. stop using its cable system to record, transmit, or observe cable subscribers' PII without their express written consent.

      D.      For liquidated damages to Plaintiff and each Class member computed at the rate of $100 a day for each day of violation of 47 U.S.C. § 551 or $1,000, whichever is higher, pursuant to 47 U.S.C. § 551(f)(2)(A).

E. For an award of punitive damages to Plaintiff and each Class member pursuant to 47 U.S.C. § 551(f)(2)(B).

F. For an award of the greater of $25 or treble damages to Plaintiff and each Class member pursuant to M.G.L. c. 93A, § 9(3).

G. For attorney's fees and expenses pursuant to all applicable laws including, without limitation, 47 U.S.C. § 551 (f)(2)(C) and M.G.L. c. 93A, § 9(3A).

H. For pre-judgment interest on any amounts awarded.

I. For such other and further relief as the Court deems just and proper.

Respectfully submitted,

PLAINTIFF

**Robert Wainblat, for himself and all others similarly situated,**

By their attorneys:

/s/ *Charles Ahern III*_____
CHARLES F. AHERN III
BBO No. 558563
KENNETH A. NEWBERG
BBO No. 568930
CORWIN & CORWIN, LLP
600 Unicorn Park Drive
Woburn, MA 01801
E-mail: cahern@corwinlaw.com
E-mail: knewberg@corwinlaw.com
Telephone: (617) 742-3420
Facsimile: (617) 742-2331

Dated: April 25, 2019

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues, claims, and matters so triable.

/s/ *Charles Ahern III*
CHARLES F. AHERN III
BBO No. 558563
KENNETH A. NEWBERG
BBO No. 568930
CORWIN & CORWIN, LLP
600 Unicorn Park Drive
Woburn, MA 01801
E-mail: cahern@corwinlaw.com
E-mail: knewberg@corwinlaw.com
Telephone: (617) 742-3420
Facsimile: (617) 742-2331

Dated: April 25, 2019